[Cite as *State v. Bickerstaff*, 2011-Ohio-1345.]

STATE OF OHIO, JEFFERSON COUNTY

IN THE COURT OF APPEALS

SEVENTH DISTRICT

| | | |
|---|---|---|
| STATE OF OHIO, | ) | |
| | ) | CASE NO. 09 JE 33 |
| PLAINTIFF-APPELLEE, | ) | |
| | ) | |
| - VS - | ) | OPINION |
| | ) | |
| TERRY L. BICKERSTAFF, | ) | |
| | ) | |
| DEFENDANT-APPELLANT. | ) | |

CHARACTER OF PROCEEDINGS:    Criminal Appeal from Common Pleas
Court, Case No. 09 CR 36.

JUDGMENT:    Affirmed in Part, Reversed in Part
and Remanded.

APPEARANCES:
For Plaintiff-Appellee:    Attorney Thomas Straus
Prosecuting Attorney
Attorney Jane M. Hanlin
Assistant Prosecuting Attorney
Jefferson County Justice Center
16001 State Route 7
Steubenville, OH 43952

For Defendant-Appellant:    Attorney Jeffrey M. Brandt
Robinson & Brandt, P.S.C.
629 Main Street, Suite B
Covington, KY 41011

JUDGES:
Hon. Mary DeGenaro
Hon. Gene Donofrio
Hon. Joseph J. Vukovich

Dated: March 15, 2011

DeGenaro, J.

{¶1}    Appellant Terry L. Bickerstaff appeals the August 10, 2009 decision of the Jefferson County Court of Common Pleas, which sentenced him to thirty-six years to life in prison, subsequent to a jury finding of guilty for aggravated murder, in violation of R.C. 2903.01(A), and murder, in violation of R.C. 2903.02(B), with accompanying firearm specifications pursuant to R.C. 2941.145, and gang specifications pursuant to R.C. 2941.142.

{¶2}    On appeal, Bickerstaff argues that he should have been given a jury instruction on the inferior offense of voluntary manslaughter, and that the trial court erroneously admitted prejudicial hearsay evidence at trial.  Bickerstaff further argues that the verdicts for his gang specifications were not supported by sufficient evidence and were against the manifest weight of the evidence, and finally, that his murder and aggravated murder convictions should have been merged at sentencing.

{¶3}    Bickerstaff did not meet his burden of proving a serious provocation by the victim in order to warrant a voluntary manslaughter instruction, and elicited the hearsay testimony he now attacks, inviting the alleged error.  The gang specification conviction is supported by sufficient evidence, and is not against the manifest weight of the evidence. Finally, Bickerstaff committed aggravated murder and murder through the single act of shooting the victim, and thus the convictions should have merged at sentencing. Accordingly, the decision of the trial court is affirmed in part, reversed in part, and the case is remanded for resentencing.

### Facts and Procedural History

{¶4}    On March 19, 2009, Bickerstaff was indicted for aggravated murder, in violation of R.C. 2903.01(A), and murder, in violation of R.C. 2903.02(B), with firearm and gang specifications, pursuant to R.C. 2941.145(A) and R.C. 2941.142, respectively. The indictment stemmed from the March 7, 2009 shooting of Darrell Longmire, in the presence of multiple witnesses.  Bickerstaff entered a plea of not guilty, and his case proceeded to a jury trial on July 30, 2009.

{¶5} The undisputed testimony of various witnesses established that Bickerstaff and Longmire engaged in a brief altercation inside the convenience store at a gas station, during the early evening of March 7, 2009. Among the witnesses to the altercation were Willette Fordham and Danielle Thompson, friends of Longmire, as well as Michelle McGee, Bickerstaff's girlfriend. Witness testimony varied regarding the extent to which the two men attempted to harm one another. As the two men fought, witnesses testified that McGee began to yell, among other things, the phrase "Su-Woo," which is commonly used by members of the Bloods to indicate their presence. After a store employee told all of the parties to leave, Longmire departed with Fordham and Thompson in Fordham's van, and Bickerstaff departed with McGee in a white truck.

{¶6} Upon leaving the gas station, Fordham drove to her house. Longmire then walked to his nearby house to drop off some items, and shortly returned to Fordham's house. Longmire and a number of other people then stood around the front of Fordham's house together to socialize. A few minutes later, Bickerstaff and another man drove up to Fordham's house in a black Lincoln and got out of the vehicle. Bickerstaff pulled out a firearm and shot Longmire in the chest at close range, causing his death.

{¶7} Steubenville Police Department Patrolman Nathan Cline testified that he was dispatched to the scene shortly after the shooting occurred. Cline testified that all eye-witnesses identified Bickerstaff as the shooter, and one witness stated repeatedly that the shooting was a "flag thing." Cline explained that the term "flag" related to the different colors of bandannas that gang members wore or displayed in order to show their affiliation with a particular gang. Multiple witnesses testified that Bickerstaff was affiliated with the Bloods, and that Longmire was affiliated with a rival gang, the Crips.

{¶8} After the police apprehended and detained Bickerstaff, Detective John Lelless took photographs of the many tattoos on Bickerstaff's body. Lelless testified that many of the tattoos involved gang-related statements, and that images such as a dog and a five-pointed star are associated with the Bloods Lelless testified that the significance of Bickerstaff's "740" tattoo is that members of the Bloods "use their area code for a specific area where they hail from." Lelless testified that Bickerstaff admitted that the various

tattoos on his body were gang tattoos, but claimed that he was no longer an active member of the gang.

{¶9} After the State's case in chief, Bickerstaff submitted a Crim.R. 29 motion regarding Bickerstaff's gang specification, arguing that the State had failed to introduce evidence that Bickerstaff continued to be a gang member at the time of the shooting, or that the shooting was related to any gang activity. The trial court overruled Bickerstaff's motion. Following Bickerstaff's case in chief, Bickerstaff requested a jury instruction for involuntary and voluntary manslaughter. Bickerstaff argued that a voluntary manslaughter instruction was warranted because "the provocation in this matter comes from the State's allegation that this is a gang-related crime." The trial court denied Bickerstaff's request.

{¶10} The jury returned verdicts of guilty for Bickerstaff's charges of murder, aggravated murder, the specification that Bickerstaff possessed a gun during the commission of his offenses, and the specification that Bickerstaff committed the offenses while participating in a criminal gang. The trial court immediately proceeded to sentencing. The trial court imposed the mandatory sentence of 30 years to life for aggravated murder, 15 years to life for murder, the mandatory sentence of three years for the gun specifications, and a sentence of three years for the gang specifications. The trial court determined that Bickerstaff's sentences should be run concurrently, for a total sentence of 36 years to life.

### Jury Instructions – Voluntary Manslaughter

{¶11} In his first of four assignments of error, which we will address slightly out of order, Bickerstaff asserts:

{¶12} "The Trial Court Erred in Denying Mr. Bickerstaff's Request for a Jury Instruction as to Voluntary Manslaughter."

{¶13} Bickerstaff argues that the trial court abused its discretion in declining to include an instruction for voluntary manslaughter in addition to the instructions for murder and aggravated murder. Bickerstaff argues that he established sufficient provocation from the victim to warrant a voluntary manslaughter instruction.

{¶14} An appellate court reviews a trial court's decision to give or not to give a particular jury instruction under an abuse-of-discretion standard. *State v. Kaufman*, 187 Ohio App.3d 50, 2010-Ohio-1536, 931 N.E.2d 143, at ¶103. An abuse of discretion connotes more than an error of law or judgment; it implies an attitude on the part of the court that is unreasonable, arbitrary, or unconscionable. *State v. Adams* (1980), 62 Ohio St.2d 151, 157, 16 O.O.3d 169, 404 N.E.2d 144.

{¶15} A jury may consider an offense that is an inferior degree of the indicted offense. *State v. Deem* (1988), 40 Ohio St.3d 205, 533 N.E.2d 294, paragraph one of the syllabus. "An offense is an 'inferior degree' of the indicted offense where its elements are identical to or contained within the indicted offense, except for one or more additional mitigating elements." Id. at paragraph two of the syllabus. Under this test, voluntary manslaughter is an inferior degree of murder. *State v. Shane* (1992), 63 Ohio St.3d 630, 632, 590 N.E.2d 272. In order to include an instruction for the inferior degree offense of voluntary manslaughter, the evidence presented at trial must "reasonably support both an acquittal on the charged crime of murder and a conviction for voluntary manslaughter." Id. The trial court is required to consider the facts of the case and evaluate the evidence in the light most favorable to the defendant. *State v. Wilkins* (1980), 64 Ohio St.2d 382, 388, 415 N.E.2d 303. Thus, a reviewing court must determine whether sufficient evidence was presented at trial relative to the voluntary manslaughter offense in order to warrant its inclusion in the instructions to the jury. In order to be entitled to an instruction, a defendant must show that there is more than "some evidence" meriting such an instruction. *Shane* at 632.

{¶16} Aggravated murder is defined as purposely causing the death of another with prior calculation and design. R.C. 2903.01(A). Felony murder is defined as causing the death of another as a proximate result of the defendant's commission of a first or second degree felony of violence. R.C. 2903.02(B). In contrast, voluntary manslaughter is defined as knowingly causing the death of another "while under the influence of sudden passion or in a sudden fit of rage, either of which is brought on by serious provocation occasioned by the victim that is reasonably sufficient to incite the person into using deadly

force."  R.C. 2903.03(A).

{¶17}  In order to warrant an instruction on voluntary manslaughter, the defendant must prove by a preponderance of the evidence that there was a provocation by the victim, that the provocation was severe enough to inflame even an ordinary person into using deadly force, and that the defendant was so inflamed.  *State v. Mack* (1998), 82 Ohio St.3d 198, 201, 694 N.E.2d 1328; *Shane* at 634.  The defendant's burden contains both an objective and a subjective element.  Objectively, "[f]or provocation to be reasonably sufficient, it must be sufficient to arouse the passions of an ordinary person beyond the power of his or her control."  Id. at 635.  And to subjectively determine whether the provocation by a victim was sufficient to provoke the use of deadly force in a particular case, "the court must consider the emotional and mental state of the defendant and the conditions and circumstances that surrounded him at the time."  *Deem*, 40 Ohio St.3d at 211, quoting *State v. Mabry* (1982), 5 Ohio App.3d 13, 5 OBR 14, 449 N.E.2d 16, paragraph five of the syllabus.  Past incidents do not satisfy the test for reasonably sufficient provocation when there is sufficient time for cooling off.  *Mack*; *Shane*.

{¶18}  The provocation in this case is purported to be the altercation between Bickerstaff and the victim inside the store at a gas station.  According to witness testimony, Bickerstaff and the victim engaged in a short argument inside the store, which ended when a store employee told them to leave.  Fordham testified that the victim pointed his finger at Bickerstaff's face and pushed him up on a beverage machine, but no punches were thrown by either party.  According to Danielle Thompson, the victim choked Bickerstaff during the altercation.  The surveillance camera video reflected that both parties had their hands on each other during the altercation.  According to the trial court's observations, Bickerstaff was the only party to throw a punch.  However, upon viewing the video provided on appeal, it is not possible to discern whether any punches were thrown, though it is clear there was a physical scuffle between Bickerstaff and the victim.

{¶19}  Although there was conflicting testimony as to who made physical contact with whom, all witnesses testified that the altercation was minor and short-lived.  The altercation between the parties does not constitute serious provocation.  This incident

would not be sufficient to incite an ordinary person to use deadly force. See *Shane* at 635. In other words, this incident could not have reasonably provoked a sudden rage or passion in Bickerstaff, leading him to shoot the victim.

{¶20} Moreover, there is no evidence that Bickerstaff was subjectively provoked. Although Bickerstaff did not testify at trial to explain his perception of the events leading up to the shooting, the testimony of other witnesses indicated that Bickerstaff remained relatively calm at the time of the altercation. Fordham testified that although Bickerstaff's girlfriend was extremely agitated, Bickerstaff himself was much calmer, and attempted to calm his girlfriend down at the time of the altercation.

{¶21} Finally, the timing of the events in this case belies the claim that Bickerstaff was subject to a "sudden fit" of passion or rage. After the two parties had argued at the convenience store, they separated ways. Over the course of approximately 10 to 15 minutes, Bickerstaff then procured a shotgun, changed vehicles, and located the victim. There is nothing in the record to indicate that Bickerstaff was acting under provocation when he shot the victim, and it appears that Bickerstaff had enough time to "cool down" over the span of 15 minutes. Thus, the evidence fails to demonstrate the requisite objective or subjective provocation to satisfy the elements of voluntary manslaughter.

{¶22} The facts of this case do not reasonably support both an acquittal on the charged crimes of murder and aggravated murder, and a conviction for voluntary manslaughter. Thus, the trial court did not abuse its discretion when it declined to instruct the jury on the offense of voluntary manslaughter. Bickerstaff's first assignment of error is meritless.

### Hearsay

{¶23} In his third assignment of error, Bickerstaff asserts:

{¶24} "The Trial Court Abused its Discretion in Admitting Hearsay as to Particularly Prejudicial Aspect of the State's Case." [sic]

{¶25} Bickerstaff argues that the trial court committed prejudicial error by allowing Detective Lelless to provide hearsay testimony in order to prove that the time marked on the surveillance recording of the altercation at the convenience store was thirteen minutes

fast. Although Bickerstaff does not articulate why the timing discrepancy in the video prejudiced his case, he is arguing that the additional thirteen minutes undermined his claim that he shot Longmire while he was under the influence of a sudden fit of rage, without sufficient time for cooling off.

{¶26} A statement other than one made by the declarant, offered to prove the matter asserted, is generally inadmissible as hearsay. Evid.R. 801(C); Evid.R. 802. As with other evidentiary rulings, the determination of the admissibility of potential hearsay statements rests within the sound discretion of the trial court and will not be disturbed absent an abuse of that discretion and prejudice to the defendant. *State v. Hand,* 107 Ohio St.3d 378, 2006-Ohio-18, 840 N.E.2d 151, at ¶92; *State v. Hymore* (1967), 9 Ohio St.2d 122, 128, 38 O.O.2d 298, 224 N.E.2d 126. An abuse of discretion is more than an error in judgment or a mistake of law; it connotes that the court's attitude is arbitrary, unreasonable or unconscionable. *Adams*, 62 Ohio St.2d at 157.

{¶27} Detective Lelless testified that he found out that the time keeper on the camera system for the convenience store was 13 minutes faster than the computer automated dispatch system used by the Steubenville Police Department. Bickerstaff did not object to this testimony, which does not contain any hearsay statements. When the State moved to admit the recording of the altercation between Bickerstaff and Longmire, Bickerstaff objected, arguing that the time lag had not been verified by any other witness, and that Lelless's testimony regarding the 13-minute difference was hearsay because he was not an employee at the convenience store. The judge noted that one only had to compare the times reflected on each system in order to determine the time difference. On cross-examination, Lelless explained that he went to the convenience store approximately four months after the shooting, and verified that there was a time difference of 13 minutes between the time reflected on the convenience store's surveillance tape, and the time reflected on the Steubenville Police Department's dispatch system. On further cross-examination:

{¶28} "Q: So there's no way of saying if the time stamp on this tape for that day was correct or whether it wasn't; is there?

{¶29} "A: I don't quite follow you, sir.

{¶30} "Q: Well, a week ago - - you are able to tell this Jury that a week ago those times weren't the same; correct?

{¶31} "A: Based on my conversation with the assistant manager at Speedway I verified the time difference, if any, and there was 13 minutes with our dispatch. I asked him has any technician or anybody fooled with the time one way or another or any maintenance since March 7th of 2009 and his reply was no one has bothered our surveillance cameras."

{¶32} Bickerstaff's only objection regarding this issue occurred when the State moved to admit the recording. Because Bickerstaff did not make any objections during Lelless's testimony, he has waived the ability to attack the admissibility of his testimony on appeal. Moreover, Bickerstaff was the only party to elicit the hearsay testimony from Lelless, thus inviting the error. "A party who invites an error may not demand from the appellate court comfort from its consequences." *State v. Jones* (1996), 114 Ohio App.3d 306, 322, 683 N.E.2d 87. Finally, Bickerstaff has not demonstrated any prejudice resulting from the hearsay statement of the convenience store employee regarding authenticity issues with the surveillance tape. Lelless testified that he personally observed the 13-minute time difference, and the observations of other witnesses verified that over ten minutes elapsed between Longmire's return home from the convenience store and the shooting.

{¶33} Bickerstaff has failed to demonstrate any prejudicial error resulting from the claimed hearsay testimony, and has otherwise waived the issue for appeal. Accordingly, his third assignment of error is meritless.

### Gang Specification – Sufficiency and Manifest Weight

{¶34} In his second assignment of error, Bickerstaff asserts:

{¶35} "The Evidence was Insufficient to Support the Verdict as to the Gang Specifications, and the Verdicts were Against the Manifest Weight of the Evidence."

{¶36} The issues of sufficiency and manifest weight of the evidence involve separate inquiries, and will be addressed in turn.

{¶37} "Sufficiency of the evidence is the standard applied to determine whether the case may go to the jury or whether the evidence is legally sufficient as a matter of law to support the jury verdict." *State v. Smith* (1997), 80 Ohio St.3d 89, 113, 684 N.E.2d 668. Thus, sufficiency is a test of adequacy. *State v. Thompkins* (1997), 78 Ohio St.3d 380, 386, 678 N.E.2d 541. Whether the evidence is legally sufficient to sustain a verdict is a question of law. Id. In reviewing the record for sufficiency, the relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. *Smith* at 113.

{¶38} Bickerstaff was found guilty of a gang specification, under R.C. 2941.142. The gang specification statute allows a trial court to impose a mandatory prison term of one to three years upon a defendant who commits "a felony that is an offense of violence while participating in a criminal gang." R.C. 2941.142(A). The definition of a criminal gang is provided by R.C. 2923.41:

{¶39} "(A) 'Criminal gang' means an ongoing formal or informal organization, association, or group of three or more persons to which all of the following apply:

{¶40} "(1) It has as one of its primary activities the commission of one or more of the offenses listed in division (B) of this section.

{¶41} "(2) It has a common name or one or more common, identifying signs, symbols, or colors.

{¶42} "(3) The persons in the organization, association, or group individually or collectively engage in or have engaged in a pattern of criminal gang activity.

{¶43} "(B)(1) "Pattern of criminal gang activity" means, subject to division (B)(2) of this section, that persons in the criminal gang have committed, attempted to commit, conspired to commit, been complicitors in the commission of, or solicited, coerced, or intimidated another to commit, attempt to commit, conspire to commit, or be in complicity in the commission of two or more of any of the following offenses:

{¶44} "(a) A felony or an act committed by a juvenile that would be a felony if committed by an adult;

**{¶45}** "(b) An offense of violence or an act committed by a juvenile that would be an offense of violence if committed by an adult;

**{¶46}** "(c) A violation of section 2907.04, 2909.06, 2911.211 [2911.21.1], 2917.04, 2919.23, or 2919.24 of the Revised Code, section 2921.04 or 2923.16 of the Revised Code, section 2925.03 of the Revised Code if the offense is trafficking in marihuana, or section 2927.12 of the Revised Code.

**{¶47}** "(2) There is a "pattern of criminal gang activity" if all of the following apply with respect to the offenses that are listed in division (B)(1)(a), (b), or (c) of this section and that persons in the criminal gang committed, attempted to commit, conspired to commit, were in complicity in committing, or solicited, coerced, or intimidated another to commit, attempt to commit, conspire to commit, or be in complicity in committing:

**{¶48}** "(a) At least one of the two or more offenses is a felony.

**{¶49}** "(b) At least one of those two or more offenses occurs on or after January 1, 1999.

**{¶50}** "(c) The last of those two or more offenses occurs within five years after at least one of those offenses.

**{¶51}** "(d) The two or more offenses are committed on separate occasions or by two or more persons."

**{¶52}** Bickerstaff argues that the State did not prove all elements of the criminal gang specification, because the State did not present evidence that Bickerstaff continued to be a member of the Bloods at the time of the shooting, or that the shooting was related to gang activity instead of a personal vendetta. Bickerstaff also argues that the State established that a gang called the Bloods existed, but failed to prove that there was a specific gang identified as the Bloods in the Steubenville area. Finally, Bickerstaff argues that witness testimony did not describe the "pattern of criminal gang activity" committed by the Bloods with adequate specificity to satisfy R.C. 2923.41(B).

**{¶53}** As for Bickerstaff's affiliation with the Bloods, Bickerstaff admitted that he was a member of the Bloods at some point in his life, but *had ceased to be an active member at some point prior to the shooting.* Detective Lelless testified that Bickerstaff

admitted that the various tattoos on his body were gang tattoos, but claimed that he was *no longer an active member of the gang*. The State presented evidence that immediately after the shooting, a *witness* at the scene told the police that the shooting was "a flag thing." Multiple witnesses explained that the term "flag" related to the different colors of bandannas that gang members wore or displayed in order to show their affiliation with a particular gang. Multiple witnesses testified that *Bickerstaff's girlfriend* began to make gang-related exclamations when Bickerstaff and Longmire began to fight at the convenience store. But there was no testimony that Bickerstaff made any such statements.

{¶54} Willette Fordham testified that she herself had been a member of the Bloods in Steubenville for approximately 18 years. Fordham also testified that she had known Bickerstaff since he was young, and that she knew Bickerstaff to be a member of the Bloods. Maleah Fletcher testified that she knew Bickerstaff to be a member of a criminal gang. Kenneth Salters testified that Bickerstaff had confided in him during his incarceration, and told Salters that he was a Blood, that Longmire was a Crip, and that their altercation arose out of something gang-related. Given the foregoing testimony, the State presented evidence that Bickerstaff continued to be a member of the Bloods at the time of the offense, and that the offense was motivated by or related to Bickerstaff's participation in the Bloods.

{¶55} As for the existence of the Bloods in the local Steubenville area, one of Bickerstaff's witnesses, Boycan, testified that there were approximately 20 to 25 people affiliated with the Bloods in the local Steubenville area. Fordham testified that she and Bickerstaff lived in Steubenville, that she had been a member of the Bloods in Steubenville, and that Bickerstaff was a member as well. Detective Lelless testified that the Bloods are active locally in the Steubenville area.

{¶56} As a final issue, Bickerstaff argues that the State failed to provide evidence that the Bloods engaged in a "pattern of criminal gang activity," in satisfaction of the elements in R.C. 2923.41(B)(2). Bickerstaff contends that the facts of his case are similar to those of *In re R.G.*, 8th Dist. No. 90389, 2008-Ohio-6469, wherein the Eighth District

reversed a juvenile's gang specification because the State had failed to demonstrate that the alleged gang in question "engaged in a pattern of criminal gang activity." Id. at ¶76. The Eighth District noted that the State had only established R.G.'s participation in a gang called the Harvard Boys, and that one of the gang's primary activity was the sale of marijuana, but did not provide any evidence that members of the gang "committed two or more of the offenses listed in R.C. 2923.41(B)(1) or that any such crimes met the additional criteria set forth in R.C. 2923.41(B)(2)." Id. The Eighth District relied on *State v. Johnson,* 10th Dist. No. 07AP-538, 2008-Ohio-590, which held that the State failed to prove that the defendant's gang had "engaged in a pattern of criminal gang activity" when it only presented expert testimony that gangs generally commit various crimes, but no testimony indicating that members of the defendant's gang had committed any specific crimes. *Johnson* at ¶39.

{¶57} Here, although the State did not present specific evidence about the history and dates of activities of the Bloods in the Steubenville area, the State's evidence was more substantial than the evidence presented in *In re R.G.* and *Johnson.*

{¶58} The State relied primarily on the testimony of Detective Lelless to establish the status of the Bloods as a criminal gang. Detective Lelless testified that he had been a police officer for nineteen years, that he had been a law enforcement corrections instructor for sixteen years, and that he trains police officers on gang recognition. Lelless testified that the Bloods operate in Steubenville, and that their primary purpose is to profit from illegal activities, namely the manufacture and distribution of drugs. Lelless testified that the Bloods are also known for committing crimes of violence. Lelless stated that various members of the Bloods have committed crimes such as "[m]urders, felonious assaults, extortion, robbery, [and] retail theft." Although Lelless did not specify the dates upon which these various crimes occurred, his discussion of the crimes indicates that they had been ongoing.

{¶59} Multiple witnesses who were self-identified members of the Bloods testified that they committed a variety of crimes while they were active members of the Bloods. Boycan testified that he was imprisoned in Missouri in 1995 for the sale, possession and

trafficking of narcotics, and was imprisoned again in Ohio in 2002 for committing felonious assault. Fordham testified that she had been released from prison in June of 2008, after having served seven years in prison for aggravated arson, which therefore would have been committed around 2001. Fordham did not say whether her offense was related to her affiliation with the Bloods, and Boycan denied that his crimes were gang-related.

{¶60} The foregoing testimony establishes that the Bloods had multiple members who committed multiple felony offenses and offenses enumerated in R.C. 2923.41(B)(1)(c). Although specific dates and timelines were not established, the testimony of the witnesses provides circumstantial evidence from which the trier of fact could infer that at least one of the member's offenses occurred on or after January 1, 1999, and that the most recent two offenses were within five years of one another. Thus, the State provided sufficient evidence to establish the "pattern of criminal gang activity" element.

{¶61} Bickerstaff's gang specifications were supported by legally sufficient evidence. Accordingly, this first portion of Bickerstaff's second assignment of error is meritless.

{¶62} In the second portion of this assignment of error, Bickerstaff asserts that his gang specification verdicts were against the manifest weight of the evidence. In contrast to the sufficiency inquiry, when reviewing a judgment under a criminal manifest weight standard of review, "[t]he court reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." *State v. Thompkins* (1997), 78 Ohio St.3d 380, 387, 678 N.E.2d 541, quoting *State v. Martin* (1983), 20 Ohio App.3d 172, 175, 20 OBR 215, 485 N.E.2d 717.

{¶63} This court's discretionary power to reverse on manifest weight grounds and grant a new trial is exercised only in the exceptional case where the evidence weighs heavily against conviction. *Thompkins* at 387. This standard is a high one because the trier of fact was in a better position to determine credibility issues, by having personally

viewed the demeanor, voice inflections and gestures of the witnesses. *State v. Ali*, 154 Ohio App.3d 493, 2003-Ohio-5150, 797 N.E.2d 1019, at ¶36; *State v. DeHass* (1967), 10 Ohio St.2d 230, 231, 39 O.O.2d 366, 227 N.E.2d 212. A reviewing court therefore should not interfere with the witness credibility and factual determinations of the jury, unless the record demonstrates that a reasonable juror simply could not have found the witness to be credible. *State v. Mock*, 187 Ohio App. 3d 599, 2010-Ohio-2747, 933 N.E.2d 270, at ¶40.

{¶64} Bickerstaff's main argument regarding the weight of the evidence is that the evidence supporting the gang specification was "scant." Specifically, Bickerstaff argues that the manifest weight of the evidence indicated that the violence between Bickerstaff and Longmire was purely motivated by personal differences, not gang activity. However, we conclude that the jury could have reasonably found from the evidence, as discussed above, that Bickerstaff was guilty of committing a felony offense of violence while participating in a criminal gang. Bickerstaff offers no reason as to why any of the damaging witness testimony lacked credibility.

{¶65} Reasonable minds could differ as to whether Bickerstaff's offense was motivated by gang activity or mere personal differences. Officer Cline testified that either Maleah Fletcher or Danielle Thompson stated repeatedly right after the shooting that it was gang-related. Maleah Fletcher testified that she knew from her conversations with Longmire that he and Bickerstaff were involved in gang activity, and that there was a history of problems between the two men, but not "big problems." Danielle Thompson testified that at the time of the altercation between Bickerstaff and Longmire at the convenience store, Bickerstaff's girlfriend yelled things about "gangs, Bloods, Crips." However, Thompson stated that she was not aware of any gang-related problems between the two men. Willette Fordham testified that Longmire approached Bickerstaff at the convenience store to address some sort of problem between the two of them, but Fordham did not know what that problem was. Fordham also testified about Bickerstaff's girlfriend's gang-related statements at the time of the altercation.

{¶66} Considering this testimony, the gang specification is not against the

manifest weight of the evidence. Although some of the testimony indicated the incident was borne out of personal animosity, there was other testimony that it was gang-related. When faced with conflicting testimony, neither of which is unbelievable, it is not our province to substitute our judgment for that of the jury. See *State v. Dyke*, 7th Dist. No. 99 CA 149, 2002-Ohio-1152, at ¶13, citing *State v. Gore* (1999), 131 Ohio App.3d 197, 201, 722 N.E.2d 125. In convicting Bickerstaff of the gang specification, the jury did not clearly lose its way so as to create a manifest miscarriage of justice. Accordingly, the second part of Bickerstaff's second assignment of error is also meritless.

### Merger

**{¶67}** In his fourth and final assignment of error, Bickerstaff asserts:

**{¶68}** "The Trial Court Plainly Erred in Failing to Merge the Aggravated Murder and Murder Convictions and by Imposing Concurrent Sentences for those Convictions."

**{¶69}** Bickerstaff argues that the trial court committed plain error in failing to merge Bickerstaff's murder and aggravated murder convictions, because Bickerstaff committed one act of firing a single shot, killing one victim. The State concedes that the trial court committed plain error, and that the case should be remanded for Bickerstaff to be resentenced subsequent to a merger of the two convictions.

**{¶70}** Bickerstaff was convicted on one count of aggravated murder, in violation of R.C. 2903.01(A), which provides that "[n]o person shall purposely, and with prior calculation and design, cause the death of another or the unlawful termination of another's pregnancy." Bickerstaff was convicted on one count of murder, in violation of R.C. 2903.02(B), which provides, "[n]o person shall cause the death of another as a proximate result of the offender's committing or attempting to commit an offense of violence that is a felony of the first or second degree and that is not a violation of section 2903.03 or 2903.04 of the Revised Code."

**{¶71}** The question of whether the two convictions should merge is governed by R.C. 2941.25, which provides:

**{¶72}** "(A) Where the same conduct by defendant can be construed to constitute two or more allied offenses of similar import, the indictment or information may contain

counts for all such offenses, but the defendant may be convicted of only one.

{¶73} "(B) Where the defendant's conduct constitutes two or more offenses of dissimilar import, or where his conduct results in two or more offenses of the same or similar kind committed separately or with a separate animus as to each, the indictment or information may contain counts for all such offenses, and the defendant may be convicted of all of them."

{¶74} The Ohio Supreme Court has recently revisited the issue of merger in *State v. Johnson*, --- Ohio St.3d ---, 2010-Ohio-6314, --- N.E.2d ---, wherein the Court reversed the court of appeals' decision that the crimes of felony murder and child endangering did not merge. The Court was unanimous in its judgment and the syllabus language: "When determining whether two offenses are allied offenses of similar import subject to merger under R.C. 2941.25, the conduct of the accused must be considered. (*State v. Rance* (1999), 85 Ohio St.3d 632, 710 N.E.2d 699, overruled.)".

{¶75} Unfortunately, with respect to the analysis to apply, there were two plurality opinions (Brown, Pfeifer, Stratton) and (O'Connor, Lanzinger, Cupp), as well as a third minority opinion (O'Donnell, Stratton). Thus, there is no *controlling* case law to guide the courts of appeals in the application of the syllabus law. See *Kraly v. Vannewkirk* (1994), 69 Ohio St.3d 627, 633, 635 N.E.2d 323 (characterizing prior case as "of questionable precedential value inasmuch as it was a plurality opinion which failed to receive the requisite support of four justices of this court in order to constitute controlling law"). Thus, we are left with the statutory language, along with the Supreme Court's mandate that the accused's conduct must be considered and that courts should no longer compare the elements of offenses solely in the abstract. *Johnson* at ¶44; ¶68 (O'Connor, J., concurring in judgment); ¶72-73 (O'Donnell, J., separately concurring).

{¶76} The record reflects that Bickerstaff committed the offenses of aggravated murder and murder through the single act of shooting Longmire, and with the single state of mind. The trial court therefore committed plain error by failing to merge Bickerstaff's convictions for murder and aggravated murder. The State "retains the right to elect which allied offense to pursue on sentencing on a remand to the trial court after an appeal."

*State v. Whitfield,* 124 Ohio St.3d 319, 2010-Ohio-2, 922 N.E.2d 182, at ¶21. This court must therefore remand the issue to the trial court for a de novo sentencing hearing during which the State may elect to pursue either Bickerstaff's murder or aggravated murder conviction, along with their corresponding firearm and gang specifications, for sentencing purposes. Accordingly, Bickerstaff's fourth assignment of error is meritorious.

{¶77} In conclusion, the trial court did not abuse its discretion in declining to provide a voluntary manslaughter instruction to the jury, Bickerstaff has not demonstrated any prejudice regarding the alleged hearsay statement, and has otherwise waived the issue on appeal. Bickerstaff's gang specification conviction is supported by legally sufficient evidence, and is not against the manifest weight of the evidence. Finally, Bickerstaff's aggravated murder and murder convictions should have been merged at sentencing. Accordingly, the judgment of the trial court is affirmed in part, reversed in part, and this cause is remanded to the trial court for resentencing.

Donofrio, J., concurs.

Vukovich, J., concurs.