[Cite as *State v. Gardner*, 2011-Ohio-2644.]

STATE OF OHIO, MAHONING COUNTY

IN THE COURT OF APPEALS

SEVENTH DISTRICT

| | | |
|---|---|---|
| STATE OF OHIO, | ) | |
| | ) | CASE NO.    10 MA 52 |
| PLAINTIFF-APPELLEE, | ) | |
| | ) | |
| - VS - | ) | O P I N I O N |
| | ) | |
| FRANK GARDNER, | ) | |
| | ) | |
| DEFENDANT-APPELLANT. | ) | |


CHARACTER OF PROCEEDINGS:         Criminal Appeal from Common Pleas
                                  Court, Case No. 09CR1159.


JUDGMENT:                         Affirmed in part; Reversed and Remanded
                                   in part.


APPEARANCES:
For Plaintiff-Appellee:           Attorney Paul Gains
                                  Prosecuting Attorney
                                  Attorney Ralph Rivera
                                  Assistant Prosecuting Attorney
                                  21 West Boardman Street, 6th Floor
                                  Youngstown, Ohio  44503


For Defendant-Appellant:          Attorney J. Dean Carro
                                  Appellate Review Office
                                  University of Akron School of Law
                                  Akron, Ohio  44325-2901


JUDGES:
Hon. Joseph J. Vukovich
Hon. Gene Donofrio
Hon. Mary DeGenaro


                                  Dated:  May 25, 2011

VUKOVICH, J.

¶{1} Defendant-appellant Frank Gardner appeals from his convictions entered in the Mahoning County Common Pleas Court after a jury trial. Appellant argues that various convictions should have been merged prior to sentencing. Appellant also contends that verdicts were contrary to the manifest weight of the evidence because the victim was not credible; however, the jury could rationally believe the testimony of the victim.

¶{2} Regarding merger, the trial court did not substantively err in its merger decisions. Procedurally, however, because the trial court merged the two kidnapping counts, it should not have entered a sentence on both kidnappings. This procedural error requires remand for the state to choose which kidnapping it would like the court to use for purposes of sentencing. Thus, the judgment of the trial court is affirmed in part and reversed and remanded in part.

## STATEMENT OF THE CASE

¶{3} The victim testified to the following. She dated appellant for a year. (Tr. 265). After she broke up with him, he arrived at her house and struck her while she was holding her daughter; when he tried to strike her again, he ended up hitting her daughter. (Tr. 239, 241 366). He apparently took her cellular telephone with him when he left. (Tr. 366, 374). The next day, September 15, 2009, the victim was driving her normal route to school when appellant pulled alongside her vehicle and pointed at her repeatedly. When she made a turn, he cut her off by slanting his vehicle in front of hers. (Tr. 239). He instructed her to get out of her car and declared, "You ain't gonna run. You think you're gonna run." (Tr. 242).

¶{4} When he moved his vehicle, she proceeded onto the freeway. Upon exiting, she intended to turn toward the police station but he swerved his vehicle to thwart her turn. He then waved a gun and screamed for her to go straight. (Tr. 242). When he thereafter instructed her to turn left, she tricked him into thinking she was turning with him. She then tried to get to a nearby friend's house, but he anticipated

this. He cut her off, approached her vehicle, ordered her out, grabbed her arm, and forced her into his vehicle. (Tr. 245).

¶{5} Appellant repeatedly asked about a person the victim had been seeing and threatened that he was going to "fuck [her] up." (Tr. 247, 254, 270). He brought her to his cousin's house, which had recently been abandoned. (Tr. 253-254). Upon exiting his vehicle, she attempted to run, but he stopped her, reiterating, "You pull some shit like that again, I'm gonna fuck you up." (Tr. 248). He led her to the front porch where he slapped her while asking why she was dressed so "cute." He then removed her shirt and ordered her to take off her pants. (Tr. 250). When he noticed that she was not wearing underwear, he called her a "slut" and a "ho." (Tr. 251).

¶{6} As a neighbor who knew appellant began walking over, appellant told the victim to put her clothes back on. (Tr. 251-252). Because she had heard arguing, she asked questions about whether the victim needed help and said she would return after she got ready for work. (Tr. 252-253). The woman returned but did not alight from her vehicle. The woman again asked if the victim wanted to leave. As appellant was pointing at the victim's back with what she assumed was the gun, the victim said that she was okay. (Tr. 255-256).

¶{7} When the neighbor drove away, appellant then asked in a crude fashion if they could have intercourse. (Tr. 256). The victim said no, but appellant pulled her pants halfway down and told the victim to lie down. (Tr. 257). He then had intercourse with her and ejaculated inside of her. He eventually brought her to her car and asked her to take him to a store to have a prescription filled and then to a nursing home to see his father. (Tr. 258). She testified that she agreed in order to trick him into thinking she was fine with the situation. (Tr. 349). After she dropped him off, she proceeded to the police station to file a report. (Tr. 268). When she described the vehicle appellant had been driving to the police, they realized that this vehicle had been reported stolen by a carjacking victim.

¶{8} Appellant was indicted on the following six counts, all with firearm specifications: (1) felonious assault in violation of R.C. 2903.11(A)(2), which entails knowingly causing or attempting to cause physical harm with a deadly weapon; (2) kidnapping in violation of R.C. 2905.01(A)(4), which entails purposely removing a

person from the place they are found or restraining the liberty of a person by force, threat, or deception with purpose to engage in sexual activity; (3) kidnapping in violation of R.C. 2905.11(A)(1), which involves these same removal or restraint elements but for the purpose of holding the person for ransom or as a shield or hostage; (4) kidnapping in violation of R.C. 2905.11(A)(2), which involves those same removal or restraint elements but for the purpose of facilitating a felony or flight thereafter; (5) rape in violation of R.C. 2907.02(A)(2), which deals with purposefully compelling another to submit to sexual conduct by force or threat of force; and (6) aggravated robbery in violation of R.C. 2911.01(A)(1) for the carjacking.

¶{9} At trial, the victim testified to the facts set forth above. Video recordings from the store were introduced. On cross-examination, defense counsel asked the victim why it appeared she was holding her keys as she entered the store even though she testified that he took her keys away from her. (Tr. 330). She responded that he must have given them back. (Tr. 342). It was also pointed out that she went to buy fruit while appellant waited at the pharmacy.

¶{10} The neighbor of the abandoned house testified that she approached the porch because she heard arguing. The victim was covering her face when she arrived. The neighbor asked appellant if he had hit the victim. (Tr. 396). Appellant answered for the victim when the neighbor tried to speak to her. (Tr. 411). When the neighbor returned, the victim looked upset, but both she and appellant stated that she was okay. (Tr. 399).

¶{11} A friend of the victim testified that appellant later told her that the victim was scared that day. (Tr. 420). She described appellant as obsessed with the victim, noting that he expressed that the victim does not have a choice as to whether she is going to be with him. (Tr. 420, 423). The victim's cousin testified that appellant called her twenty times late at night after the day of the incident. He admitted that he blocked the victim's car and revealed that if he cannot have the victim then "no one will." (Tr. 487-488). He asked the cousin to tell the victim that if she does not call him, he would "fuck her up." (Tr. 489).

¶{12} The emergency room physician testified that the victim was depressed and crying and had redness on the left side of her face. (Tr. 436, 444). A detective

testified that he directed the taking of photographs the day after the incident showing bruising to the left side of the victim's face and swelling on the right side. (Tr. 542-544). A forensic scientist testified that the secretions submitted from the victim's rape kit were consistent with the samples obtained from appellant. (Tr. 595-596).

¶{13} The defense filed a motion for an acquittal. The court granted the motion as to the ransom/shield/hostage kidnapping in count three. The jury returned a not guilty verdict as to the aggravated robbery in count six. The jury convicted appellant of the remaining counts (felonious assault, two kidnappings, and rape) and their firearm specifications.

¶{14} At the sentencing hearing, the state asked for the maximum sentence, which it calculated as thirty-one years based upon its statement that the maximum sentences on the kidnapping counts should run concurrently. (Tr. 3-4). Defense counsel argued that not only should the kidnapping counts merge with each other but they should also merge with the rape conviction. (Tr. 6).

¶{15} The court sentenced appellant to eight years for felonious assault and ten years for rape to run consecutive with each other. The court stated that the kidnapping charges would merge for purposes of sentencing but then imposed a ten-year sentence on each count to run concurrently with each other and concurrently with the felonious assault and rape sentences. The firearms specifications were merged and appellant was sentenced on one specification to three years, for a total of twenty-one years in prison.

ASSIGNMENT OF ERROR NUMBER ONE

¶{16} Appellant's first assignment of error provides:

¶{17} "THE TRIAL COURT COMMITTED PLAIN ERROR WHEN IT FAILED TO MERGE THE ALLIED OFFENSES OF KIDNAPPING, FELONIOUS ASSAULT AND RAPE FOR PURPOSES OF SENTENCING, AS REQUIRED BY R.C. 2941.45 [AND THE CONSTITUTION]."

¶{18} Appellant essentially argues here that all counts should merge so that only one count is remaining. Since trial counsel only asked for the merger of the two kidnapping counts with each other and the kidnapping with the rape, appellant relies

on the plain error doctrine to present appellate arguments regarding the other possible combinations of merger. The judicial doctrine of merger is codified as follows:

¶{19} "(A) Where the same conduct by defendant can be construed to constitute two or more allied offenses of similar import, the indictment or information may contain counts for all such offenses, but the defendant may be convicted of only one.

¶{20} "(B) Where the defendant's conduct constitutes two or more offenses of dissimilar import, or where his conduct results in two or more offenses of the same or similar kind committed separately or with a separate animus as to each, the indictment or information may contain counts for all such offenses, and the defendant may be convicted of all of them." R.C. 2941.25.

¶{21} First, the elements of the offenses are compared. If the elements do not sufficiently coincide so that the defendant's conduct constitutes offenses of dissimilar import[1], then the inquiry ends and the defendant can be found guilty and punished for both crimes as the offenses are of dissimilar import. If the elements of one offense do correspond to the required degree with the elements of another offense, then the court proceeds to the second stage, which evaluates whether the offenses were committed separately or with separate animus. See *State v. Logan* (1979), 60 Ohio St.2d 126, 130 (defining animus as purpose or immediate motive).

¶{22} In comparing the elements of the offenses under the first step of the analysis, the Supreme Court previously required that the elements be compared in the abstract without regard to the facts of the case to determine if the elements of the offenses correspond to such a degree that the commission of one crime will necessarily result in the commission of the other. *State v. Rance* (1999), 85 Ohio St.3d 632, 636. See, also, *State v. Cabrales*, 118 Ohio St.3d 54, 2008-Ohio-1625, ¶14-15, 23-27 (but modifying *Rance* so that an exact alignment of the elements or a strict textual comparison was not required). Thus, the Court previously considered the defendant's conduct only in the second stage and did not permit consideration of the defendant's conduct in comparing the elements. See id. See, also, *State v. Jones*

---

[1]The Supreme Court skips this first step (or automatically finds the elements aligned) where the defendant is charged with alternative means of committing an offense under the same code section. *State v. Brown*, 119 Ohio St.3d 447, 2008-Ohio-4569, ¶35, 37, 39.

(1997), 78 Ohio St.3d 12, 14 (considering defendant's conduct in determining separate animus).

**¶{23}** However, the Ohio Supreme Court recently overruled *Rance*. Although the decision contained two plurality opinions and a minority opinion, a unanimous Court signed the syllabus and held: "When determining whether two offenses are allied offenses of similar import subject to merger under R.C. 2941.25, the conduct of the accused must be considered." *State v. Johnson*, 128 Ohio St.3d 153, 2010-Ohio-6314, syllabus. When combining opinions, a majority of the Court found that the *Rance* test was contrary to the plain language of R.C. 2941.25, which specifically instructs the court to view the defendant's conduct. Id. at ¶41-42 (plurality) 78 (O'Donnell, J., concurring in syllabus and judgment and concurring separately). Not much else from the various opinions can be considered precedent. See *State v. Bickerstaff*, 7th Dist. No. 09JE33, 2011-Ohio-1345, ¶75. Our only new guidance is to consider the defendant's conduct and thus the particular facts of each case to determine whether the offenses are of similar import.

**¶{24}** We begin with the two kidnapping counts. Appellant proceeds under the assumption that the court merged these offenses but erred by entering sentence on each as running the sentences concurrently is not the proper procedure for merger. As appellant points out, where two offenses must be merged, this must be performed prior to sentencing so that a sentence is only entered on one offense. *State v. Whitfield*, 124 Ohio St.3d 319, 2010-Ohio-2, ¶17-18 (a defendant may be indicted and tried for allied offenses of similar import, but may be sentenced on only one of the allied offenses). Sentencing concurrently on merged counts does not satisfy the merger doctrine as no sentence at all should be entered on one of the two merged counts. See id.

**¶{25}** The state does not address this concept but instead sets forth arguments as to why the two kidnapping offenses need not be merged. The state argues that a kidnapping to facilitate a felony or flight thereafter and a kidnapping to engage in sexual activity are not allied offenses of similar import because the elements of one crime do not correspond to such a degree with the elements of the other crime that the commission of one will necessarily result in commission of the other. Alternatively, the

state argues that appellant engaged in multiple instances of kidnapping and that the two types of kidnapping were committed with a separate animus.

¶{26} However, the state's position below essentially conceded that merger was appropriate. That is, the state asked for the maximum sentence, which it explicitly stated was thirty-one years. The state arrived at this number by adding the eight-year maximum for felonious assault, the ten-year maximum for one kidnapping, the ten-year maximum for rape, and three years for one of the firearm specifications. Although the state characterized the kidnapping sentences as running concurrently with each other, this appears to be a reflection of the common misperception that merger can be satisfied by running sentences concurrent.

¶{27} Notably, after the state set forth its recommendation, defense counsel stated, "The case law also apparently seems to allow and provide for not only the two kidnapping charges but the rape * * * for that to merge as well as an allied offense of similar import." (Tr. 6). The state only responded to the argument concerning the rape merging with the kidnapping, which suggested it agreed that the kidnappings should be merged with each other. (Tr. 7). By calculating the maximum in the method it did and by not refuting defense counsel's belief that the kidnapping counts were conceded to be merged, the state apparently agreed that the kidnappings should merge.

¶{28} More importantly, the trial court specifically stated that the kidnappings were merged for purposes of sentencing. (Tr. 10). The imposition of ten years for each kidnapping and then running them concurrently merely seems to be the court following the aforementioned misconception that running sentences concurrently satisfies the merger doctrine. This imposition of concurrent sentences does not erase the court's stated sentencing decision that the counts were to be merged. Thus, we proceed under the position that the trial court merged the kidnappings on the state's request[2] and that we are thus only reviewing the proper procedure to employ after the merger, as opposed to the propriety of the merger itself.

¶{29} It thus follows that upon expressly merging the kidnapping counts, the trial court erroneously imposed sentences on both counts. When two counts are

---

[2]"Under [the invited-error] doctrine, a party is not entitled to take advantage of an error that he himself invited or induced the court to make." *State ex rel. Kline v. Carroll*, 96 Ohio St.3d 404, 2002-Ohio-4849, ¶27.

merged, a sentence can only be entered on one. *State v. Whitfield*, 124 Ohio St.3d 319, 2010-Ohio-2, ¶17-18. Running the sentences concurrently for two merged counts is improper. See id. Because a new sentencing entry is required which imposes only one kidnapping sentence and because we do not know which kidnapping conviction is to receive the ten-year sentence, this specific sentencing issue must be remanded for a new sentencing hearing where the state can determine which kidnapping the court should use for purposes of sentencing. See id. at ¶21-25 (state's right to elect which offense should remain for purposes of sentencing on remand of judgment that erroneously imposed concurrent sentences for merged offenses); *State v. Fellows*, 7th Dist. No. 09JE36, 2010-Ohio-2699, ¶58.

¶{30} We turn now to the issue of whether the kidnapping and the rape should have been merged. The state acknowledges that the elements of kidnapping correspond to such a degree with forcible rape that the rape could not have been committed without the commission of a kidnapping. See *State v. Powell* (1990), 49 Ohio St.3d 255, 262 (implicit in every forcible rape is a kidnapping; such offenses are allied offenses of similar import). See, also, *State v. Parker*, 7th Dist. No. 03MA190, 2005-Ohio-4888, ¶24, citing *State v. Adams*, 103 Ohio St.3d 508, 2004-Ohio-5845. In viewing the facts of the case under the new *Johnson* holding, the prior holdings dealing with separate animus as to rape during a kidnapping are still relevant.

¶{31} When a kidnapping is committed during another crime, there exists no separate animus where the restraint or movement of the victim is merely incidental to the underlying crime. *State v. Fears* (1999), 86 Ohio St.3d 329, 344, citing *Logan*, 60 Ohio St.2d 126. The kidnapping must have a significance independence from the rape. *State v. Craig*, 110 Ohio St.3d 306, 2006-Ohio-4571, ¶117. "Where the asportation or restraint of the victim subjects the victim to a substantial increase in risk of harm separate and apart from that involved in the underlying crime, there exists a separate animus as to each offense sufficient to support separate convictions." Id. Moreover, where the restraint was prolonged, the confinement was secretive, or the movement was substantial, a separate animus exists. *State v. Lynch*, 98 Ohio St.3d 514, 2003-Ohio-2284, ¶135; *Fears*, 86 Ohio St.3d at 344, citing *Logan*, 60 Ohio St.2d at syllabus.

**¶{32}** "[W]here an individual's immediate motive is to engage in sexual intercourse, and a so-called 'standstill' rape is committed, the perpetrator may be convicted of either rape or kidnapping, but not both. In contradistinction, an individual who restrains his intended rape victim for several days prior to perpetrating the rape, or who transports her out of the state or across the state while intermittently raping her, may well be considered to have a separate animus as to each of the offenses of kidnapping and rape, and convictions on multiple counts could reasonably be sustained." *Logan*, 60 Ohio St.2d at 132 (describing the two extremes).

**¶{33}** In *Logan*, the Court found no separate animus for kidnapping where the defendant forced a victim into an alley and down a flight of stairs before raping her. *Logan*, 60 Ohio St.2d at 132. The Court found this movement to have no significance except for facilitation of the offense of rape and determined that it did not present a substantial increase in harm above that presented by the rape itself. Id. at 135. See, also, *State v. Adams*, 103 Ohio St.3d 508, 2004-Ohio-5845, ¶93 (no evidence of separate animus for kidnapping where the victim was not moved from her bedroom in which the defendant found her or restrained in any way other than what was necessary). Cf. *State v. Rogers* (1985), 17 Ohio St.3d 174, 181-182 (Court found a separate animus for kidnapping where the defendant moved the victim from an outside stairway into his apartment and then to his bedroom).

**¶{34}** *Here, the force used was more than necessary, the movement was substantial, the restraint was prolonged, and the confinement was at least attempted to be kept secret.* Specifically, as for the force used, appellant used a car and a gun to facilitate the offense and he struck the victim repeatedly. Regarding the asportation, appellant forced the victim to turn down certain streets while pointing a gun at her, he forcibly dragged her from her car to his car, he drove her to a different location said to be a mile away, and he then drove or had her drive him to other locations. Concerning the prolonged restraint, he drove her to a house that was not nearby, he argued with her for some time, and he waited twenty to thirty minutes for the neighbor to get ready for work before engaging in sexual intercourse. Transporting her to an abandoned house is a consideration in the secretive confinement evaluation. Finally, other considerations are pertinent such as the fact that he wished to kidnap her for various

reasons besides merely to have sex with her (including his wish to criticize her, warn her, and interrogate her). Combined, these factors result in a finding that appellant had a separate animus for the kidnapping and the rape. As such, the court did not err in refusing to merge the kidnapping with the rape.

¶{35} We now address appellant's contention that kidnapping should merge with felonious assault and that felonious assault should merge with rape. Appellant acknowledges that he did not raise these argument below, and he thus asks only for a plain error review. Crim.R. 52(B); *State v. Hughbanks*, 99 Ohio St.3d 365, 2003-Ohio-4121, ¶39 (recognition of plain error must be done with the utmost of care by the appellate court and only in exceptional circumstances where it is necessary to avoid a manifest miscarriage of justice); *State v. Noling*, 98 Ohio St.3d 44, 2002-Ohio-7044, ¶62 (plain error can be recognized if there existed an obvious error affecting such substantial rights that it was outcome determinative). Notably, this is a discretionary doctrine which may, but need not, be employed if warranted. *Hughbanks*, 99 Ohio St.3d 365 at ¶39

¶{36} *However, this is not a case where the merger issues were not argued below. Rather, defense counsel specifically stated that felonious assault would stand by itself and would not merge.* (Sent. Tr. 6). *Thus, the error was invited. A party cannot take advantage of an error which the court was asked to make. State v. Ahmed*, 103 Ohio St.3d 27, 2004-Ohio-4190, ¶75; *State v. Davis*, 116 Ohio St.3d 404, 2008-Ohio-2, ¶86 (under the doctrine of invited error, a party cannot attempt to benefit from an error at trial that he invited).

¶{37} In any event, kidnapping and felonious assault did not have corresponding elements. Looking at the facts of the case as required by *Johnson*, appellant did not necessarily kidnap the victim in order to assault her with a deadly weapon and each of the assaults pointed out by the state were not committed solely to kidnap her. Regardless, it is rational to find that appellant had a separate animus for the kidnapping and the felonious assault.

¶{38} Moreover, the rape and felonious assault did not have corresponding elements. Assaulting the victim by way of causing or attempting to cause physical harm with a deadly weapon was at times an act of anger separate and apart from his

act of raping the victim. Regardless, there existed a separate animus for each offense as appellant had a different purpose or motive to each; part of the reason for the felonious assault was to express anger and to force her to speak to him whereas the rape was committed later and was disconnected from the episodes of assault.

¶{39} For all of these reasons, the trial court's substantive merger decisions are affirmed. However, the procedural problem of imposing two sentences on the merged kidnapping offenses and running these sentences concurrently requires the kidnapping sentence to be reversed and remanded for resentencing where the state shall choose which subsection it wishes the court to enter a sentence on.

## ASSIGNMENT OF ERROR NUMBER TWO

¶{40} Appellant's second assignment of error contends:

¶{41} APPELLANT'S CONVICTIONS FOR KIDNAPPING, RAPE, AND FELONIOUS ASSAULT WERE AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE, AND THE JURY'S JUDGMENT SHOULD BE REVERSED PURSUANT TO THIS COURT'S AUTHORITY UNDER SECTION 3(B)(3), ARTICLE IV, OF THE OHIO CONSTITUTION."

¶{42} Weight of the evidence deals with the inclination of the greater amount of credible evidence to support one side of the issue over the other. *State v. Thompkins* (1997), 78 Ohio St.3d 380, 387. In reviewing a manifest weight of the evidence argument, the reviewing court examines the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses, and determines whether in resolving conflicts in the evidence, the trial court clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. Id. A reversal on weight of the evidence is ordered only in exceptional circumstances. Id. In fact, where a criminal case has been tried by a jury, only a unanimous appellate court can reverse on the ground that the verdict was against the manifest weight of the evidence. Id. at 389, citing Section 3(B)(3), Article IV of the Ohio Constitution (and noting that the power of the court of appeals is limited in order to preserve the jury's role with respect to issues surrounding the credibility of witnesses).

¶{43} In conducting our review, we proceed under the theory that when there are two fairly reasonable views of the evidence or two conflicting versions of events, neither of which is unbelievable, it is not our province to choose which one should be believed. *State v. Gore* (1999), 131 Ohio App.3d 197, 201. Rather, we defer to the jury who was best able to weigh the evidence and judge the credibility of witnesses by viewing the demeanor, voice inflections, and gestures of the witnesses testifying before it, including appellant himself. See *Seasons Coal Co. v. Cleveland* (1994), 10 Ohio St.3d 77, 80; *State v. DeHass* (1967), 10 Ohio St.2d 230, 231.

¶{44} Appellant's sole argument here is that the victim's story is not credible. He urges that since she was in her own vehicle, she would have been able to elude him if she really wanted to. He notes that this occurred in the middle of the day and that a neighbor had approached the porch twice, which provided the victim with an escape if she wanted it. He points to her statement that he took her keys from her at the store but then a video showed that she had her keys as she entered the store. He described her explanation (that he must have given her keys back) as essentially incredible. He notes that she bought fruit while he was getting his prescription filled and that she could have left the store at any time. He asks us to consider that she filed the police report because she was mad that he gave her a sexually transmitted disease prior to the break up and that he had not been treated before their last encounter (this was the prescription he was ordering).

¶{45} However, the jury heard testimony that appellant had an obsession with the victim and that he did not think she had a right to reject him. The jury heard that a neighbor was concerned enough about the situation that she approached to inquire about the argument and then returned before she went to work. The jury heard the victim testify at length. The jury heard that the victim feared appellant on the day of the incident due to his actions the prior day. She stated that he waved a gun at her, ordered her where to turn, cut her vehicle off multiple times, dragged her from her vehicle to his, drove her to an abandoned house, grabbed her when she tried to run, stripped her twice, hit her in the face multiple times, pointed a gun at her back, repeatedly threatened to "fuck her up," and forced sexual intercourse upon her with the gun in the front pocket of his hooded sweatshirt after she said no. The jury saw her

demeanor, voice inflection, eye movements, and gestures. They occupied the best position to determine whether the story took place as she claimed it did.

¶{46} Although a rational juror could find the victim to lack credibility, a rational juror could just as easily conclude that her version of events was credible. As such, the verdict was not contrary to the manifest weight of the evidence. This assignment of error is overruled.

¶{47} For the foregoing reasons, the judgment of the trial court is affirmed in part, reversed and remanded in part. Because the trial court merged the two kidnapping counts, it should not have entered a sentence on both kidnappings. This procedural error requires remand for the state to choose which kidnapping it would like the court to use for purposes of sentencing.

Donofrio, J.,
DeGenaro, J.,