[Cite as *State v. Novoa*, 2021-Ohio-3585.]

# IN THE COURT OF APPEALS OF OHIO

## SEVENTH APPELLATE DISTRICT
## MAHONING COUNTY

STATE OF OHIO,

Plaintiff-Appellee,

v.

ARTURO NOVOA,

Defendant-Appellant.

---

**OPINION AND JUDGMENT ENTRY**
**Case No. 19 MA 0073**

---

Criminal Appeal from the
Court of Common Pleas of Mahoning County, Ohio
Case No. 18 CR 850

**BEFORE:**
Cheryl L. Waite, Carol Ann Robb, Judges and Judge Stephen W. Powell, Judge of the
Twelfth District Court of Appeals, Sitting by Assignment.

---

**JUDGMENT:**
Affirmed in part. Reversed in part.
Sentence Vacated. Remanded in part.

---

*Atty. Dave Yost*, Ohio Attorney General, and *Atty. Daniel Kasaris*, Senior Assistant
Attorney General and Special Assistant Mahoning County Prosecutor, 615 West Superior
Ave , 11th Floor, Cleveland Ohio 44113, for Plaintiff-Appellee

*Atty. Louis M. Defabio*, 4822 Market Street, Suite 220, Youngstown, Ohio 44512, for Defendant-Appellant.

Dated: September 30, 2021

_____

**WAITE, J.**

{¶1}    Appellant, Arturo Novoa, a.k.a. Anthony Gonzalez, appeals his convictions and sentences entered in the Mahoning County Court of Common Pleas. Appellant contends that his guilty plea was not made in a knowing, intelligent and voluntary fashion because he claims the trial court failed to inform him of the aggregate maximum sentence that could be imposed. He also argues his convictions and sentences violate his rights under the Double Jeopardy Clause of both the Ohio and U.S. Constitutions. Finally, Appellant argues the trial court erred in imposing consecutive sentences. For the following reasons, Appellant's assignments relating to his guilty plea and convictions are without merit and his convictions are affirmed. However, it was error for the trial court to sentence Appellant on all offenses, as some offenses merged for sentencing purposes. Consequently, we remand to the trial court for resentencing on these offenses, for the state to elect on which offenses Appellant is to be sentenced.

Factual and Procedural History

{¶2}    Appellant met the victim, Shannon Graves ("Graves"), in April of 2016. They moved in together in September, 2016 at a home located on Mahoning Avenue in Youngstown. Their relationship was tumultuous and Appellant was known to be physically violent toward Graves. In December of 2016 the relationship ended. Appellant then moved in with his co-defendant, Katrina Layton ("Layton"). But one week later, Appellant moved back into the Mahoning Avenue home with Graves.

Case No. 19 MA 0073

**{¶3}** The relationship continued to be volatile. On February 24, 2017, Appellant bludgeoned Graves to death in the bathroom of their home. Afterward, Appellant engaged in a drawn-out and somewhat gruesome attempt at trying to destroy the evidence of Graves' murder, involving multiple locations over a period of several months. He first shaved Graves' head. He then wrapped Graves' body in garbage bags and Appellant and Layton placed Graves in the trunk of her car. They drove the body to Layton's home on Shields Road where Appellant and another co-defendant, Andrew Herrmann ("Herrmann"), dismembered Graves' body in the garage. Appellant and Hermann removed Graves' arms, legs and head from her torso. They placed her arms and legs in a storage tote or bin and placed her head and torso in a second bin. The bins were transported back to the Mahoning Avenue property sometime between March 1 and March 11, 2017. The bins containing Graves' dismembered body were placed in a freezer at the Mahoning Avenue home.

**{¶4}** On March 1, 2017, Appellant contacted a friend who resided on Sherwood Avenue in Youngstown and asked if he could have a bonfire at his friend's house. Appellant and Layton brought Graves' personal belongings, including clothing, papers, her hair, and a bracelet with the name "Shannon" on it, and burned them in a large bonfire at the Sherwood location. At one point, the fire became so large that the fire department arrived to investigate. The following day, the occupants of the Sherwood address went out to the area where the fire had been raging. They were concerned because they had seen Appellant and Layton removing things from bags and totes and putting them in the fire. They found the bracelet, and then dug the ashes out of the fire pit and put them in a laundry basket, which was later recovered by the police during the investigation.

{¶5} Appellant and Layton ordered 12 gallons of sulfuric acid from Wal-Mart using the name "Chicken Man". The sulfuric acid was shipped to the Wal-Mart store in Boardman, Ohio and picked up by Appellant and Layton on March 11, 2017. Because the order was placed under the name "Chicken Man" instead of a named person, the Wal-Mart employee refused to tender the acid without identification. Layton showed her identification and used her credit card to pay for the acid. Appellant and Layton took the acid back to the Mahoning Avenue home where they poured all 12 gallons into the bin containing Graves' head and torso. Most of her torso and skull dissolved in the acid. The portion of Graves' skull that remained was placed in the freezer along with her arms and legs at the Mahoning Avenue home. Her body remained in this freezer until June of 2017.

{¶6} In the intervening months, Graves' family continued to inquire of Appellant about Graves' whereabouts. Appellant, Layton and Layton's two children moved into the Mahoning Avenue home and began driving Graves' car. They also used Graves' WIC card several times. Appellant repeatedly told Graves' family and others that Graves had moved to Cleveland with one man and then to Columbus with another man. The family became increasingly suspicious after several months passed and Graves failed to communicate with her family. The family also discovered that Graves' dog was still at the Mahoning Avenue residence which caused alarm, because the family strongly felt that Graves would never leave her dog.

{¶7} On April 29, 2017, Appellant was seen by an officer of the Youngstown Police Department committing a traffic offense. When the officer attempted to affect the traffic stop, Appellant fled in his vehicle. The officer gave chase and Appellant abandoned

the vehicle and fled on foot. He was tasered, arrested, and charged with fleeing and eluding. Appellant was released on bond.

{¶8} On June 22, 2017, Graves' sister, Debbie DePaul, filed a missing person report with the Youngstown Police Department. DePaul and Graves' former fiancé began to look for Graves. Appellant became aware of this and became concerned that police would search the Mahoning Avenue home. (Sentencing Tr., p. 24.) Layton rented a bottom floor apartment in a house on Ravenwood Avenue in Youngstown. Appellant purchased a second freezer at a Wal-Mart store on Belmont Avenue in Youngstown which they took to the Ravenwood apartment. Appellant removed Graves' body from the freezer on Mahoning Avenue, again placed the remainder of her body in the trunk of Graves' car, and transported it to the Ravenwood apartment, where he placed the remains in the second freezer. A short time later, the landlord of the Ravenwood apartment contacted Layton inquiring as to why no one had moved into the apartment. The only property in the apartment was the freezer, the warranty booklet for the freezer, and a black suitcase.

{¶9} Around this time the Youngstown Police Department executed a search warrant at the Mahoning Avenue home. Again becoming nervous about being detected, Appellant contacted a friend and told him that Appellant's electricity was out in his home and that he needed a place to store his freezer full of meat. His friend agreed to store Appellant's freezer at his house on Devitt Avenue in Campbell, Ohio. Appellant and two of his friends took the freezer from the Ravenwood apartment to his friend's house at approximately 3:00 a.m. the next morning. A short time later, Appellant's friend decided to open the freezer and help himself to some of the meat supposedly contained in the freezer. A lock had been placed on the freezer, but it was installed upside down, enabling

the lock to be fairly easily opened. When Appellant's friend opened the freezer, he found a bag containing Graves' remains.

{¶10} On September 21, 2017, Appellant and a number of co-defendants were indicted by the Mahoning County Grand Jury in Case No. 17 CR 856. Appellant was indicted on five felony offenses: aggravated murder in violation of R.C. 2903.01(B), an unclassified felony; murder in violation of R.C. 2903.02(A)(D), an unclassified felony; tampering with evidence in violation of R.C. 2921.12, a felony of the third degree; obstruction of justice a violation of R.C. 2921.32, a felony of the third degree; and abuse of a corpse in violation of R.C. 2927.01, a felony of the fifth degree. Mahoning County Case No. 17 CR 856 was dismissed on October 24, 2018, after Appellant was reindicted (in Mahoning County Case No. 18 CR 850) for the offenses that are the subject of the instant appeal.

{¶11} On August 30, 2018, Appellant and his co-defendants were indicted by the Mahoning County Grand Jury in Case No. 18 CR 850 on multiple charges. For clarity and because of the relevance to Appellant's assignments of error, the charges against Appellant are set forth in the chart below:

| Count | Charge | Details |
|---|---|---|
| 1 | Aggravated murder (unclassified) | |
| 2 | Murder (unclassified) | |
| 3 | Tampering with evidence | Placing the body in garbage bags in trunk of Graves' car |
| 4 | Tampering with evidence | Dismembering Graves' left arm |
| 5 | Tampering with evidence | Dismembering Graves' right leg |
| 6 | Tampering with evidence | Dismembering Graves' left leg |

| 7 | Tampering with evidence | Dismembering Graves' right arm |
| 8 | Tampering with evidence | Placing left leg in bag in first freezer |
| 9 | Tampering with evidence | Placing right leg in bag in first freezer |
| 10 | Tampering with evidence | Placing right arm in bag in the first freezer |
| 11 | Tampering with evidence | Placing left arm in bag in first freezer |
| 12 | Tampering with evidence | Placing left leg in bag in second freezer |
| 13 | Tampering with evidence | Placing right leg in bag in second freezer |
| 14 | Tampering with evidence | Placing right arm in bag in second freezer |
| 15 | Tampering with evidence | Placing left arm in bag in second freezer |
| 16 | Tampering with evidence | Burned torso and head with sulfuric acid |
| 17 | Tampering with evidence | Disposing of what remained after sulfuric acid |
| 18 | Tampering with evidence | Moving body from location 1 to location 2 |
| 19 | Tampering with evidence | Moving body from location 2 to location 3 |
| 20 | Tampering with evidence | Moving body from location 3 to location 4 |
| 21 | Tampering with evidence | Burned bracelet with name "Shannon" on it |
| 22 | Tampering with evidence | Burned Graves' shoes in a bonfire |

Case No. 19 MA 0073

| 23 | Tampering with evidence | Burned Graves' camera in a bonfire |
|---|---|---|
| 24 | Tampering with evidence | Burned Graves' clothes in a bonfire |
| 25 | Tampering with evidence | Burned Graves' clothes in a bonfire |
| 26 | Tampering with evidence | Burned Graves' clothes in a bonfire |
| 27 | Abuse of a Corpse | Placing arms, legs and ½ of Graves' skull in first freezer |
| 28 | Abuse of a Corpse | Placing arms, legs and ½ of Graves' skull in second freezer |
| 29 | Abuse of a Corpse | Burning torso and head with sulfuric acid |
| 30 | Abuse of a Corpse | Cut legs and arms off of torso |
| 31 | Abuse of a Corpse | Placing ½ of Graves' skull in the second freezer |
| 32 | Abuse of a Corpse | Transporting Graves' body in trunk of Graves' car |
| 33 | Possession of Criminal Tools | Sulfuric acid |
| 34 | Possession of Criminal Tools | Black garbage bags |
| 35 | Possession of Criminal Tools | Freezers |
| 36 | Theft of WIC Benefits | |
| 37 | Theft of WIC Benefits | |
| 38 | Theft of WIC Benefits | |
| 39 | N/A – Codefendant charged with Intimidation | |

Case No. 19 MA 0073

| 40 | N/A – Codefendant charged with Intimidation | |
|----|----------------------------------------------|---|
| 41 | N/A – Codefendant charged with Obstruction of Justice | |
| 42 | Grand Theft of Motor Vehicle | Stealing Graves' car |
| 43 | Drug Trafficking | marijuana |
| 44 | Drug Trafficking | marijuana |
| 45 | Drug Trafficking | marijuana |
| 46 | Drug Trafficking | marijuana |
| 47 | N/A – Codefendant charged with Tampering with evidence | |
| 48 | Engaging in a Pattern of Corrupt Activity | |

{¶12} After pretrial negotiations, Appellant entered a plea agreement on May 19, 2019. The State of Ohio agreed to dismiss Count I of the indictment, aggravated murder, after Appellant pleaded guilty to the remaining 43 counts.

{¶13} A sentencing hearing was held on June 24, 2019. At the outset, the court heard statements from Graves' older sister and 18-year-old brother. After considering the record, the victim impact statements, the statements and recommendation of counsel and of Appellant, the PSI, the sentencing exhibits, the principles and purposes of sentencing under R.C. 2929.11, the seriousness and recidivism factors under R.C. 2929.12, and the guidelines contained in R.C. 2929.13, the trial court imposed the following sentence: Appellant was sentenced to the mandatory 15 years to life in prison on Count 2, murder. On Count 3, tampering with evidence, Appellant received 36 months;

Case No. 19 MA 0073

Counts 4, 5, 6, and 7, tampering with evidence, 36 months on each; Counts 8, 9, 10, 11, 12, 13, 14, and 15, tampering with evidence, 36 months on each; Counts 16 and 17, tampering with evidence, 36 months on each; Counts 18, 19 and 20, tampering with evidence, 36 months on each; Counts 21, 22, 23, 24, 25 and 26, tampering with evidence, 36 months on each; Counts 27, 28, 30 and 32, abuse of a corpse, 11 months on each; Count 31, abuse of a corpse, 11 months; Counts 33, 34 and 35, possession of criminal tools, 11 months on each. On Counts 36, 37 and 38, theft of WIC benefits, Appellant was sentenced to 11 months on each; Count 42, grand theft of a motor vehicle, 17 months; Counts 43, 44, 45, and 46, drug trafficking, 11 months on each; and finally, on Count 48, engaging in a pattern of corrupt activity, Appellant received 10 years.

{¶14} The state made the following merger recommendation which was adopted by the trial court:

Count 3, tampering with evidence to merge with Count 32, abuse of a corpse;

Counts 4, 5, 6, and 7, tampering with evidence to merge;

Count 5, tampering with evidence, to merge with Count 30, abuse of a corpse;

Counts 8, 9, 10, 11, 12, 13, 14, 15, tampering with evidence, to merge;

Count 9, tampering with evidence, to merge with Count 27, abuse of a corpse;

Count 10, tampering with evidence, to merge with Count 28, abuse of a corpse;

Count 16, tampering with evidence, merger with Count 29, abuse of a corpse;

Counts 21, 22, 23, 24, 25, 26, tampering with evidence, to merge together.

{¶15} The trial court ordered the following convictions to be served concurrently:

Count 16, tampering with evidence, concurrent with Count 17, tampering with evidence;

Counts 18, 19, and 20, tampering with evidence, to be served concurrently;

Counts 33, 34, and 35, possession of criminal tools, to be served concurrently;

Counts 36, 37, and 38, theft of WIC benefits, to be served concurrently;

Counts 43, 44, 45, and 46, drug trafficking, to be served concurrently.

Finally, the trial court ordered Counts 2, 3, 4, 8, 16, 18, 21, 31, 33, 36, 42, 43, and 48 to be served consecutively. Ultimately, Appellant was sentenced to a total stated prison term of 48 years to life in prison.

{¶16} Appellant filed this timely appeal.

ASSIGNMENT OF ERROR NO. 1

Case No. 19 MA 0073

Appellant's guilty plea was not knowing, intelligent and voluntary because the trial court failed to inform him of the maximum penalties as required by Crim. R. 11(C)(2)(a).

{¶17} Appellant argues his plea is invalid because the trial court failed to inform him of the aggregate prison sentence if his offenses were ordered to be served consecutively. He also argues that this failure by the trial court violated Crim.R. 11(C)(2).

{¶18} "When a defendant enters a guilty plea in a criminal case, the plea must be made knowingly, intelligently, and voluntarily. Failure on any of those points renders enforcement of the plea unconstitutional under both the United States Constitution and the Ohio Constitution." *State v. Engle,* 74 Ohio St.3d 525, 527, 660 N.E.2d 450 (1996). Crim.R. 11(C) governs the process of accepting guilty pleas to felony charges and sets forth the colloquy the trial court must have with the defendant:

In felony cases the court may refuse to accept a plea of guilty or a plea of no contest, and shall not accept a plea of guilty or no contest without first addressing the defendant personally either in-person or by remote contemporaneous video in conformity with Crim.R. 43(A) and doing all of the following:

(a) Determining that the defendant is making the plea voluntarily, with understanding of the nature of the charges and of the maximum penalty involved, and if applicable, that the defendant is not eligible for probation or for the imposition of community control sanctions at the sentencing hearing.

(b)    Informing the defendant of and determining that the defendant understands the effect of the plea of guilty or no contest, and that the court, upon acceptance of the plea, may proceed with judgment and sentence.

(c)    Informing the defendant and determining that the defendant understands that by the plea the defendant is waiving the rights to jury trial, to confront witnesses against him or her, to have compulsory process for obtaining witnesses in the defendant's favor, and to require the state to prove the defendant's guilt beyond a reasonable doubt at a trial at which the defendant cannot be compelled to testify against himself or herself.

Crim.R. 11(C)(2).

**{¶19}** Trial courts are required to strictly comply with the constitutional components of the colloquy, which are set forth in Crim.R. 11(C)(2)(c); *State v. Veney,* 120 Ohio St.3d 176, 2008-Ohio-5200, at ¶ 18-21.  In contrast, the requirements set forth in Crim.R. 11(C)(2)(a) and (b) require substantial compliance.  *Veney,* ¶ 14-17.

**{¶20}**  Crim.R. 11(C)(2)(a) requires a trial court to "[d]etermine that the defendant is making the plea voluntarily, with understanding of the nature of the charges and the maximum penalty involved[.]"  As this is not a constitutional requirement only substantial compliance by the trial court is required.  *Id.*  In *State v. Johnson,* 40 Ohio St.3d 130, 532 N.E.2d 1295 (1988), the Ohio Supreme Court considered whether a defendant is required to be informed of the aggregate total prison term he or she faces.  The *Johnson* Court clarified that when a defendant enters a guilty plea to multiple offenses, "neither the United States Constitution nor the Ohio Constitution requires that in order for a guilty plea to be

voluntary a defendant must be told the maximum total of the sentences his faces[.]"  *Id.* at 133.  Further, the Court considered whether the failure to inform a defendant of an aggregate total prison term violated Crim.R. 11(C).  *Id.*  The *Johnson* Court ultimately concluded that a trial court properly complies with Crim.R. 11(C) by informing the defendant of the maximum sentence faced for each of the individual charged crimes. *Johnson,* at 134.  Specifically, "[f]ailure to inform a defendant * * * that the court may order him to serve any sentences imposed consecutively, rather than concurrently, is not a violation of Crim.R. 11(C)(2) and does not render the plea involuntary."  *Id.* at syllabus.

{¶21}  Citing a recent Ohio Supreme Court decision in *State v. Bishop,* 155 Ohio St.3d 156, 2018-Ohio-5132, 124 N.E.3d 766, Appellant contends the holding in *Johnson* was based on the previous version of Crim.R. 11 and is no longer good law due to the 1998 amendments to Crim.R. 11.  In *Bishop,* a three-judge plurality of the Ohio Supreme Court questioned the applicability of *Johnson* under the current version of Crim. R. 11(C). Contrary to Appellant's assertion, the Court was not reviewing the issue under consideration in this case.  *Bishop* addressed a specific question:  whether a defendant who pleads guilty to a new felony committed while on postrelease control must also be informed of the consequences that could result from the postrelease control violation during the plea colloquy.  *Bishop,* ¶ 14-17.  In fact, the plurality was careful to note the distinction:

> [W]hat happened to the defendant in Johnson is a far cry from what happened to Bishop. Johnson was told of his potential sentences for each individual offense; the trial court just failed to tell Johnson the sentences for each offense could run consecutively.  Here, the trial court told Bishop that

he could receive a maximum sentence of 12 months for his fifth-degree-felony conviction. But the trial court did not tell Bishop that he was also subject to a separate consecutive 12-month sentence for his postrelease-control violation.

*Id.* at ¶ 16.

**{¶22}** Appellant concedes that many appellate jurisdictions, including this Court, have continued to follow *Johnson.* We have held, "[t]he maximum penalty referred to in Crim.R. 11(C)(2)(a) refers to the sentence for each charge rather than the cumulative total of all sentences for all charges to which the defendant is pleading." *State v. Magby,* 7th Dist. Mahoning No. 17 MA 0006, 2019-Ohio-877, ¶ 25. Our sister districts have similarly determined the question in *Bishop* dealt solely with issues of post release control and the law set forth in *Johnson* still applies. See *State v. Roberts,* 9th Dist. Medina No. 19CA0004-M, 2019-Ohio-4393; *State v. Nelson,* 8th Dist. Cuyahoga Nos. 109072, 109073, 109260, 2020-Ohio-6993; *State v. Ellis,* 5th Dist. Coshocton Nos. 2019CA0014, 2019CA0015, 2020-Ohio-1130.

**{¶23}** In the instant matter, the trial court, on the record, ascertained that Appellant understood the nature of the charges against him in accordance with Crim.R. 11(C). Further, the court explained to Appellant the maximum penalty involved for each of the offenses to which he had entered his plea:

**THE COURT**: Okay. Just to make sure you understand them, I'm going to go through the penalties with you.

With respect to murder, a violation of R.C. 2903.02(A)(D), that's an unclassified felony. You can be sentenced from 15 years to life in prison for that, and you can also be fined $15,000 for that offense. Do you understand that?

**THE DEFENDANT**: Yes, Your Honor.

**THE COURT**: Okay. And with regard to tampering with evidence, in violation of 2921.12(A)(1)(B), that's a felony of the third degree. You're charged with this offense in Counts Three through Twenty-Six. Now, each one of those counts is a felony of the third degree, and the court can fine you up to $10,000 as a fine and penalty for each one of those offenses as well, and you could additionally be sentenced from 9 to 36 months in prison on each one of those counts, Three through Twenty-Six. Do you understand that?

**THE DEFENDANT**: Yes, Your Honor.

**THE COURT**: Okay. Also with respect to the charge of abuse of a corpse, in violation of 2927.01(B)(C), that's also a felony of the fifth degree. You could be sentenced on Count Twenty-Seven, Twenty-Eight, Twenty-Nine, Thirty, Thirty-One, and Thirty-Two -- they're all the same charges. On each one of those charges, since they're all felony fives, you could be sentenced from 6 to 12 months in prison on each one of those and be fined $2,500 for each one of those offenses as well. Do you understand that?

**THE DEFENDANT**:  Yes, Your Honor.

**THE COURT**:  Okay.  Counts Thirty-Three, Thirty-Four, and Thirty-Five of the indictment are charges of possession of criminal tools, in violation of Revised Code 2923.24.  Those three counts are also felonies of the fifth degree.  You can be sentenced to each one of those felonies of the fifth degree from 6 to 12 months in prison and fined $2,500 on each one of those counts as well.  Do you understand that?

**THE DEFENDANT**:  Yes, Your Honor.

**THE COURT**:  Okay.  In Counts Thirty-Six, Thirty-Seven, and Thirty-Eight are the charges of illegal use of food stamps, in violation of Revised Code 2913.46.  Those, too, are felonies of the fifth degree, all three counts, and you can be sentenced from 6 to 12 months on each one of those counts as well as $2,500 on -- as a fine on each one of those counts.  Do you understand that?

**THE DEFENDANT**:  Yes, Your Honor.

**THE COURT**:  Okay.  Do you further understand that on Count Forty-Two, which is grand theft of a motor vehicle, a violation of Revised Code 2913.02(A)(1)(B)(5), that's a felony of the fourth degree, and you can be charged anywhere from 6 months to 18 months in prison on that count, and you can be fined $5,000 on that count as well.  Do you understand that?

**THE DEFENDANT**: Yes, Your Honor.

**THE COURT**: Okay. Counts Forty-Three, Forty-Four, Forty-Five, and Forty-Six are charges of trafficking in drugs, in violation of Revised Code 2925.03(A)(1)(C)(3)(a). Those charges are all felonies of the fifth degree. You can be sentenced from 6 to 12 months on each one of those counts as well and fined up to $2,500 for each one of those counts as well. Do you understand that?

**THE DEFENDANT**: Yes, Your Honor.

* * *

**THE COURT**: And then finally I have Count Forty-Eight, engaging in a pattern of corrupt activity, in violation of Revised Code 2523.32(A)(1), and that's a felony of the first degree, and the sentence on a felony of the first degree could be potentially anywhere from 3 to 11 years in prison as well as a fine in the amount of $20,000. That is a non-mandatory sentence. Counts Forty-Three, Forty-Four, Forty-Five, and Forty-Six are non-mandatory. Thirty-Three, Thirty-Four, Thirty-Five, Thirty-Six, Thirty-Seven, Thirty-Eight, and Forty-Two are non-mandatory. Counts Three through Thirty-Two are also non-mandatory sentences; however, Count Two, murder, the unclassified felony of the 15 to life, is a mandatory sentence with no possibility of judicial release.

(5/30/19 Plea Hrg. Tr., pp. 8-13.)

Case No. 19 MA 0073

**{¶24}** The court further explained the nature of postrelease control before asking Appellant whether he understood. Appellant responded, "[y]es, Your Honor." Prior to accepting Appellant's guilty plea, the trial court personally addressed Appellant, explaining all of the constitutional and statutory rights which he was waiving by entering a plea. Appellant repeatedly expressed his understanding of the implications of each plea. Appellant entered his guilty plea to all of the charges with no objection from counsel, and the matter was set for sentencing pending a presentence investigation.

**{¶25}** The record clearly reflects that the trial court provided Appellant with information as to the specific maximum penalties which he potentially faced for each separate count. Appellant argues that the 1998 revisions to Crim.R. 11, occurring after *Johnson* was decided, amended the rule so that a single plea can now apply to multiple charges. By Appellant's logic, this now means that the "maximum penalty involved" refers to the aggregate maximum sentence. Appellant cites no authority for this contention. Regardless, the record clearly establishes that Appellant entered a separate plea of "guilty" to each count. The trial court, as regards the mandates of Crim.R.11(C)(2)(a), more than substantially complied in addressing the maximum penalty involved for each separate plea. *Magby,* ¶ 25. Appellant's case is directly on point with the facts in *Johnson*, and because postrelease control was not a consideration in this matter, the plurality holding in *Bishop* is inapplicable here. Accordingly, Appellant's argument that Crim.R. 11(C)(2)(a) required the trial court to inform him of the aggregate maximum sentence that he possibly faced is not well-taken.

**{¶26}** Appellant's first assignment of error is without merit and is overruled.

ASSIGNMENT OF ERROR NO. 2

Case No. 19 MA 0073

A number of Appellant's convictions and sentences violate the Appellant's rights under the Double Jeopardy Clauses of the United States and Ohio Constitutions.

{¶27} Appellant presents two issues within his double jeopardy argument. First, Appellant argues he was given multiple punishments for the same criminal act in violation of the Double Jeopardy Clause of both the Ohio and United States Constitutions. Second, Appellant contends the trial court erred in not properly merging the counts, which resulted in the trial court imposing multiple sentences for the same conduct in violation of his right not to be subject to double jeopardy.

{¶28} Ohio has codified certain protections for defendants consistent with the Double Jeopardy clause of the Ohio and the U.S. Constitution in R.C. 2941.25, which provides:

(A) Where the same conduct by defendant can be construed to constitute two or more allied offenses of similar import, the indictment or information may contain counts for all such offenses, but the defendant may be convicted of only one.

(B) Where the defendant's conduct constitutes two or more offenses of dissimilar import, or where his conduct results in two or more offenses of the same or similar kind committed separately or with a separate animus as to each, the indictment or information may contain counts for all such offenses, and the defendant may be convicted of all of them.

Case No. 19 MA 0073

**{¶29}** The merger of allied offenses pursuant to R.C. 2941.25 presents a question of law that we review de novo. *State v. Ursic,* 7th Dist. Harrison No. 18 HA 0006, 2019-Ohio-5088, ¶ 9. The Ohio Supreme Court set forth the test to determine if two offenses are allied offenses of similar import in *State v. Ruff,* 143 Ohio St.3d 114, 2015-Ohio-995, 34 N.E.3d 892. In *Ruff,* the Court established a fact-specific analysis that considers the defendant's conduct, the animus, and the import. *State v. Williams,* 7th Dist. Mahoning No. 13 MA 125, 2015-Ohio-797, 43 N.E.3d 797, ¶ 17, citing *Ruff* at ¶ 26. The three-part analysis requires a review of: (1) whether the offenses are dissimilar in import or significance; in other words, whether each offense contains a separate and identifiable harm; (2) whether the offenses were committed separately; and (3) whether the offenses were committed with separate animus or motivation. *Ruff* at ¶ 26. If the answer to any of the three parts is "yes," then the offenses do not merge. *Id.* However, when it is determined that the offenses merge pursuant to R.C. 2941.25(A), the defendant can be found guilty of all of the charged offenses, but can be punished only on one. *Id.* There is no bright-line rule, as the fact-specific nature of the test requires a case-by-case analysis. *Ruff,* ¶ 30.

Tampering with Evidence

**{¶30}** Appellant argues that all of his convictions for tampering with evidence should have merged for sentencing purposes.

**{¶31}** Appellant pleaded guilty and was convicted of 24 counts of tampering with the evidence. As noted in the earlier chart, each count related to different conduct, in different locations, throughout a time span of several months. After merger, Appellant

was sentenced on eight counts of tampering with the evidence. Tampering, as defined by R.C. 2921.12(A)(1), provides:

(A) No person, knowing that an official proceeding or investigation is in progress, or is about to be or likely to be instituted, shall do any of the following:

(1) Alter, destroy, conceal, or remove any record, document, or thing, with purpose to impair its value or availability as evidence in such proceeding or investigation[.]

{¶32} There are three elements of the offense of tampering with the evidence: (1) knowledge of an official proceeding that is in progress or is likely to be; (2) the alteration, destruction, concealment or removal of potential evidence; and (3) action having the purpose of impairing the evidence's availability or value in this proceeding or investigation. *State v. Straley,* 139 Ohio St.3d 339, 2014-Ohio-2139, 11 N.E.3d 1175, ¶ 11.

{¶33} Appellant does not argue the first element, regarding knowledge of an official proceeding. Regarding the second element, Appellant contends that there was only one "thing," or piece of evidence, that he was convicted of tampering with: "Graves' body and the clothing/personal effects on her body at the time of her death." Appellant contends that Graves' body and her attendant personal effects are all one item for purposes of the statute. Contrary to Appellant's single-evidence argument, by his own admission these constitute more than one piece of evidence as Graves' body, clothing and personal effects are not one item by even the most literal interpretation. Appellant

also argues that all of the tampering convictions were based on a single animus: "to alter, conceal, destroy or remove evidence relating to Graves' death." (Appellant's Brf., p. 20.)

**{¶34}** The state contends that each charge of tampering with the evidence represented separate incidents that occurred over several months and involved separate instances where Appellant tampered with evidence of Graves' murder.

**{¶35}** In determining whether offenses are allied offenses of similar import, *Ruff* requires an appellate court to look beyond the statutory elements and consider the defendant's conduct and the manner in which the offenses were committed. *Ruff,* ¶ 25.

**{¶36}** Here, after Appellant murdered Graves, he engaged in several distinct acts having the purpose of concealing any evidence of his murder. First, he wrapped Graves' body in trash bags and placed it in the trunk of her car. Second, he transported her body to the garage of Layton's home. Next, he dismembered her body by removing each of Graves' limbs and her head. Then, he transported these body parts back to Graves' home. Next, Appellant placed each of her limbs in the first freezer in Graves' home. He later moved the limbs to a second freezer in the Ravenwood apartment, months after the murder. Then he burned her torso and head in the second storage tote with sulfuric acid. Next, he disposed of the remains of Graves' torso and head after his attempt at dissolving these in acid and placed them in the freezer with her limbs. Then, he burned Graves' shoes, clothing, bracelet, and camera in a bonfire at a separate location. Appellant then moved the second freezer containing Graves' remains to the Devitt location, where they were finally discovered.

**{¶37}** Of the eight counts of tampering with evidence on which Appellant was sentenced after merger, count 3 related to his act of wrapping Graves' body in garbage

bags and putting her remains in the trunk of her car to conceal the body. Count 4 was based on Appellant dismembering Graves' limbs, and was merged with counts 5, 6, and 7, which also addressed her dismemberment. Count 8 pertained to Appellant's concealment of Graves' remains in the first freezer and was merged with counts 9, 10, 11, 12, 13, 14 and 15, all of which involved the placing of each limb initially in the first freezer, and then each limb in the second freezer. Count 16 related to burning Graves' head and torso in sulfuric acid, and was merged with count 29, abuse of a corpse, which also related to burning her head and torso with acid. Count 17 addressed Appellant's disposal of the remains not consumed by the acid and was not merged for sentencing. Count 18 involved Appellant's transportation of Graves' body from her home to Layton's garage. Count 19 addressed Appellant's transportation of Graves' dismembered body from the Mahoning Avenue home to the Ravenwood apartment. Finally, Count 20 involved Appellant's act of moving Graves' dismembered body yet again, from the Ravenwood apartment to his friend's home on Devitt.

{¶38} Multiple violations of the same statute are not allied offenses of similar import, and a defendant may be sentenced for each separate violation. *State v. Larsen,* 89 Ohio App.3d 371, 375-376, 624 N.E.2d 766 (4th Dist.1993). Appellant's assertion that he tampered with only one piece of evidence, warranting a single tampering with the evidence charge, is disingenuous at best. The analogy of a single sheet of paper being ripped into pieces with the dismemberment of a human body was tone-deaf, at the least. Regardless, it is clear from this record that the state proved all of the offenses of tampering with multiple items of evidence. There was not only Graves' body (both before and after Appellant's dismemberment) but also Graves' clothing, papers, camera, shoes

Case No. 19 MA 0073

and jewelry. The fact that multiple types of evidence existed is further demonstrated by the fact that Appellant felt the need to utilize several methods in his attempt to destroy or hide the varying types of evidence. Appellant wrapped and transported Graves' intact body away from the scene. Appellant dismembered Graves' body at a separate location. Appellant placed Graves' body parts in different storage containers and freezers, the locations of which were moved throughout a several month period in order to avoid detection. Graves' clothing, papers, camera, shoes, and jewelry were burned in a large bonfire at a different occasion. Appellant's conduct abundantly demonstrates that he was dealing with multiple types of evidence he felt necessary to alter, conceal or destroy in an attempt to prevent these items of evidence from being discovered during the investigation.

{¶39} It is clear that Appellant tampered with multiple items of evidence to hinder the investigation, consisting first of Graves' entire body, and later the separate and distinct body parts, as well as Graves' clothing, shoes, camera, and jewelry. He utilized multiple methods of tampering, depending on the type of evidence. Appellant admits he engaged in every type of violation possible pursuant to statute, including altering, concealing and destroying by means of dismemberment, acid burning, hiding, and fire. Contrary to Appellant's assertion, Graves' body and personal effects do not amount to a single piece of evidence in this matter, based on this record. As the investigation progressed and he feared imminent discovery of his initial crime he acquired additional pieces of Graves' belongings and undertook various means of destruction. Finally, the multiple actions carried out by Appellant to tamper with the multiple pieces of evidence were motivated by separate animus related to the progression of the investigation. Although the shared underlying basis was certainly to avoid detection for committing murder, Appellant

Case No. 19 MA 0073

addressed his growing desperation over a period of several months with a variety of different behaviors: continuing to relocate the body time and again as well as his repeated decision to acquire and destroy additional pieces of evidence throughout in order to hinder the investigation. Thus, because there was separate and distinct conduct to constitute separate offenses of tampering with multiple pieces of evidence, the trial court did not err in the manner in which it addressed merger of the tampering with evidence counts.

Possession of Criminal Tools

{¶40} Appellant also argues that all of his convictions for possession of criminal tools should have merged for sentencing. Appellant pleaded guilty to three counts of possession of criminal tools. He was sentenced to 11 months on each count to be served concurrently with each other. Possessing criminal tools is governed by R.C. 2923.24(A) which reads, "[n]o person shall possess or have under the person's control any substance, device, instrument, or article, with purpose to use it criminally." R.C. 2923.24(A). Appellant was convicted and sentenced as follows: Count 33 referred to the sulfuric acid Appellant used to burn Graves' head and torso. Count 34 pertained to the black garbage bags Appellant used to wrap and store Graves' body. Count 35 involved the freezers used by Appellant to store Graves' body in various locations.

{¶41} Appellant contends that all three items were used in furtherance of the single crime of disposing of Graves' body. In comparing each of the offenses, it is clear from the evidence in the record that Appellant acquired each of the different criminal tools at a different time, utilized them at differing locations, and acquired each for a separate untoward purpose. After murdering Graves, Appellant used garbage bags to conceal and transport her body, continuing to use the bags throughout for storing, concealing and

transporting her body. Appellant and Layton later ordered the sulfuric acid online, once the determination was made that they should attempt to destroy and alter Graves' torso and head using acid rather than maintain them intact in the freezers. Lastly, Appellant used one freezer at Graves' home for storage. Once the missing person report was filed and the Youngstown Police Department would clearly begin their investigation, Appellant purchased a second freezer in order to conceal Graves' remains, ultimately at other locations. Again, pursuant to *Ruff*, Appellant's conduct demonstrates separate and distinct conduct causing separate, identifiable harm to the evidence in this matter. Therefore, the trial court did not err in failing to merge the three convictions for possession of criminal tools convictions at sentencing.

### Abuse of a Corpse

{¶42} Appellant also argues that his convictions for abuse of a corpse should have merged with the convictions for tampering with evidence.

{¶43} Abuse of a corpse is governed by R.C. 2927.01(B) and provides, "[n]o person, except as authorized by law, shall treat a human corpse in a way that would outrage reasonable community sensibilities." R.C. 2927.01(B). Appellant pleaded guilty and was convicted on six counts of abuse of a corpse. After merger, Appellant was sentenced to 11 months on a single count of abuse. Count 31 related to Appellant putting the remaining one-half of Graves' skull in the second freezer he purchased. As noted above, Appellant was sentenced on eight counts of tampering with the evidence. Appellant argues that the single sentence for abuse of a corpse should have merged with Count 28, relating to Appellant placing Graves' arms, legs and one-half if her skull in the second freezer. Count 28 was merged with Count 10 (placing Graves' right arm in the

first freezer).  However, had all three merged as proposed by Appellant, there would have been no sentence imposed for placing Graves' body in the second freezer.  None of the tampering with evidence sentences imposed involved placing Graves' body in the second freezer.  The single sentence imposed for abuse of a corpse addresses Appellant's act of placing Graves' remains in the second freezer.  *Ruff* holds that courts cannot merge offenses involving separate conduct.  *Ruff,* ¶ 26.  Under the *Ruff* analysis, the act of placing Graves' body in freezer two not only was separate and distinct conduct from placing her body in the first freezer, but involved separate animus for this conduct, in that the second freezer was purchased by Appellant months after he committed the murder only to avoid discovery of Graves' body in the first freezer.  Therefore, the trial court did not err in failing to merge count 31, abuse of a corpse, at sentencing.

{¶44}  Appellant's second assignment of error is without merit and is overruled.

ASSIGNMENT OF ERROR NO. 3

The trial court erred in imposing consecutive sentences.

{¶45}  Appellant asserts the trial court's imposition of consecutive sentences is contrary to law because the trial court imposed maximum, consecutive sentences on the non-violent felonies because of the murder conviction.

{¶46}  Although not specifically raised in detail in Appellant's brief, there is another threshold issue we must address that was raised at oral argument.  As stated, the trial court merged multiple counts of the indictment for sentencing:

Count 3, tampering with evidence to merge with Count 32, abuse of a corpse;

Counts 4, 5, 6, and 7, tampering with evidence to merge together;

Count 5, tampering with evidence, merge with Count 30, abuse of a corpse;

Counts 8, 9, 10, 11, 12, 13, 14, 15, tampering with evidence, to merge together;

Count 9, tampering with evidence, merge with Count 27, abuse of a corpse;

Count 10, tampering with evidence, merge with Count 28, abuse of a corpse;

Count 16, tampering with evidence, merger with Count 29, abuse of a corpse;

Counts 21, 22, 23, 24, 25, 26, tampering with evidence, to merge together.

{¶47} A "conviction" for purposes of R.C. 2941.25(A) can only be entered on one offense once two offenses have been merged, and the trial court must memorialize on which count the state has elected to proceed to sentencing. A court that merges separate counts may only sentence on one. *State v. Whitfield,* 124 Ohio St.3d 319, 2010-Ohio-2, 922 N.E.2d 182, ¶ 13, 24. Thus, when a trial court merges offenses, no sentence is imposed on the other, merged offenses. *Id.* at ¶ 17-18. Although the trial court merged the offenses as discussed, the court entered sentences on all of the offenses, some to run consecutively and some concurrently. It is clear the imposition of consecutive

Case No. 19 MA 0073

sentences clearly runs afoul of the merger doctrine under any standard. In addition, merger is not lawfully accomplished even if the court runs the sentences concurrently, as the state must be allowed to elect on which count the offender is to be sentenced and there is no sentence imposed on the other, merged, offenses. *State v. Damron,* 129 Ohio St.3d 86, 2011-Ohio-2268, 950 N.E.2d 512, ¶ 17. "Sentencing concurrently on merged counts does not satisfy the merger doctrine as no sentence at all should be entered on one of the two merged counts." *State v. Gardner,* 7th Dist. Mahoning No. 10 MA 0052, 2011-Ohio-2644, ¶ 24. Sentencing a defendant on a merged count is plain error, as a defendant is prejudiced by having more convictions on his record than authorized by law. *State v. Underwood,* 124 Ohio St.3d 365, 2010-Ohio-1, 922 N.E.2d 923, ¶ 31.

**{¶48}** Thus the trial court's imposition of sentence on the merged counts was plain error, affecting Appellant's right to be sentenced on only one of the merged offenses. Where, as here, a trial court has improperly sentenced on merged counts, the matter must be remanded for a limited resentencing hearing so the state can select on which of the merged offenses the court is to enter a conviction and impose sentence. *Whitfield,* ¶ 21-22.

**{¶49}** As we must remand this matter for a limited resentencing of the merged counts where the trial court improperly imposed concurrent and consecutive sentences, Appellant's third assignment of error otherwise addressing the court's decision to impose consecutive sentences is moot.

**{¶50}** Appellant's guilty pleas and subsequent guilt findings are affirmed. Because the trial court erred in its decision to sentence Appellant on offenses that the court merged, Appellant's sentence is hereby vacated. We remand this matter in order

to allow the state to determine on which of the merged offenses it wishes the court to enter a conviction and sentence. All other aspects of the trial court's judgment is affirmed.

Robb, J., concurs.

Powell, J., concurs.

_____

For the reasons stated in the Opinion rendered herein, Appellant's assignments of error are overruled. However, because we find plain error in the trial court's decision to sentence Appellant on offenses that the court merged, Appellant's sentence is hereby vacated. It is the final judgment and order of this Court that the judgment of the Court of Common Pleas of Mahoning County, Ohio, is affirmed in part and reversed in part. We hereby remand this matter to the trial court for further proceedings according to law and consistent with this Court's Opinion. Costs to be taxed against the Appellee.

A certified copy of this opinion and judgment entry shall constitute the mandate in this case pursuant to Rule 27 of the Rules of Appellate Procedure. It is ordered that a certified copy be sent by the clerk to the trial court to carry this judgment into execution.

## NOTICE TO COUNSEL

**This document constitutes a final judgment entry.**